THE STATE v. FREDERICKS AND LANGON, *Appellants*.

Division Two, November 20, 1896.

1. **Criminal Practice**: SELF-DEFENSE: INSTRUCTION. Defendants in a criminal case are entitled to an instruction on self-defense, although their testimony is the only evidence to support it.

2. ———: ASSAULT TO KILL: COMMON ASSAULT: INSTRUCTION. Where on a trial for assault with intent to kill there is evidence to show that the assault was made with a stick which was not a deadly weapon the defendant is entitled to an instruction on common assault.

3. ———: CROSS-EXAMINATION: RECALLING WITNESS. Ordinarily it is a matter of discretion of the trial court to permit a witness to be recalled for cross-examination.

4. ———: ASSAULT TO KILL: CONSPIRACY. Where on the trial of two defendants jointly indicted for assault with intent to kill, the evidence fails to show a conspiracy on their part, each defendant is responsible only for his own acts.

*Appeal from Buchanan Criminal Court.*—HON. R. E. CULVER, Judge.

REVERSED AND REMANDED.

*Charles F. Strop, L. J. Eastin,* and *Harl & Harl* for appellants.

(1) It is the duty of the trial court to give all necessary instructions, whether asked to do so or not, and where instructions are offered which are objectionable, the court should give such as the law requires. *State v. Stonum,* 62 Mo. 596; *State v. Palmer,* 88 Mo. 568; *State v. Banks,* 73 Mo. 592. (2) The court erred in failing to instruct on the theory of self-defense as to each defendant. A defendant who has testified is entitled to have instructions predicated on the facts sworn to by him. *State v. Anderson,* 86 Mo. 309; *State v. Banks,* 73 Mo. 592; *State v. Tate,* 12 Mo. App. 327. (3) The court erred against defendant Fredericks, in refusing to give the sixth instruction, asked by the defendants. A person, himself in the peace, has the right and is legally bound to attempt to quell an affray which he sees in progress, and, if assaulted while making this attempt, the right of self-defense will not be denied him. 2 Bishop's Criminal Law, sec. 573, *et seq.* (4) The court erred in refusing instruction

number 10, asked by defendant. *State v. Reynolds*, 126 Mo. 516; *Shadle v. State*, 34 Tex. 572; *Skidmore v. State*, 43 Tex. 93; *U. S. v. Small*, 1 Curtis, C. C. 241; *People v. Roderigo*, 69 Cal. 601; *Doering v. State*, 19 Am. Rep. (Ind.) 669; *State v. O'Brien*, 119 Mass. 342. (5) The court erred in failing to instruct upon the question of common assault. *State v. Reynolds*, 126 Mo. 516; *State v. Kelly*, 16 Mo. App. 214; *State v. Dineen*, 10 Minn. 325. (6) The court erred in giving of its own motion, instructions 5 and 6 because they assume the existence of a conspiracy.

*R. F. Walker*, attorney general, and *A. B. Duncan*, prosecuting attorney, for the state.

(1) The second count, the one under which the defendants were convicted, is sufficient and follows the language of the statute under which it was drawn. R. S. 1889, sec. 3489. (2) The verdict of the jury was neither against the weight of the evidence nor contrary to the law as declared by the court, but on the other hand was in harmony with the law and supported by the testimony of all the disinterested parties who saw the difficulty and showed the defendants guilty beyond question. It is only where there is a total failure of proof that this court will interfere. *State v. Punshon*, 124 Mo. 448; *State v. Fischer*, 124 Mo. 460. (3) It is ridiculous to assert under the testimony in this case that the punishment assessed by the jury was unusual, extreme and cruel; they were guilty of felonious assault with intent to kill Crossland and were only prevented by the intervention of the persons present; there was not an element of common assault. (4) Complaint is made of the instructions given upon the part of the state. It will be observed from the reading of the instructions that they are in

the usual form many times approved by this court, and clearly declare the law applicable under the indictment and the testimony; in fact, they covered the entire case and rendered it unnecessary to give any of the instructions asked by the defendants.

GANTT, P. J.—The defendants were jointly indicted at the June term, 1895, of the criminal court of Buchanan county, and, after a continuance, were duly arraigned and tried and were convicted of a felonious assault upon one J. R. A. Crossland.

The facts appear to be that J. R. A. Crossland, the prosecuting witness, was a negro doctor in St. Joseph; defendant Langon was a negro school teacher in a public school in said city, and defendant Fredericks was the editor of a newspaper published for the negro population of that city and vicinity. Controversies had arisen as to the conduct of the public schools for the negroes in St. Joseph, in which Crossland was arrayed on the one side and Fredericks and Langon on the other. Crossland and his faction were endeavoring to have Langon removed.

On the night of the assault in question Crossland and his adherents had held a meeting for the purpose of passing resolutions derogatory to Langon and as defendants charge had gone to Crossland's office to take further steps to have these resolutions published. Langon having heard of these resolutions started, as he claims, to Crossland's office to learn their exact nature before publication. Langon asserts that there had been a similar difference prior to this time and Crossland had invited Langon to call on him in the future and learn the true facts. Fredericks accompanied Langon to the office of Crossland but remained on the street while Langon went in.

As to the occurrences inside of the office there is an

"irreconcilable conflict" in the evidence of the contending parties. The testimony on the part of the state tended to show that after Langon entered Crossland's office he became angry, and assaulted said Crossland with a stick and a pair of metal knuckles. The testimony on the part of the state is conflicting as to whether Langon ever struck Crossland with said knuckles, three of the state's witnesses testifying that he did not strike Crossland, but that the knuckles were taken away from him immediately upon his attempting to take them out of his pocket. None of the witnesses testified that Crossland was injured at all by said knuckles. Crossland and one other witness testified that Langon struck at Crossland and slightly fractured his (Crossland's) tooth. Langon himself denied ever having the knuckles or attempting to use them, but stated that, on the contrary, upon his being seated in Crossland's office, he was assaulted by Crossland and others present, and that he did nothing whatever except attempt to repel the assault made upon him and to leave Crossland's office.

While there is some conflict as to details in the testimony, as to what occurred during the difficulty prior to the entrance of Fredericks and after the beginning of the affray, the testimony shows that Langon, during the difficulty, was thrown down, beaten, bruised, and badly used. This state of affairs had existed for a period of four or five minutes when Fredericks, who had been in the neighborhood, both seeing and hearing the difficulty, entered the office. Up to this time Langon was the only person who had received any injury whatever.

As to what occurred after Fredericks entered the office, there is also much conflict in the testimony. The testimony on the part of the state is to the effect that after the difficulty had progressed as above set forth, Fredericks entered the office of Crossland and assaulted

Crossland with a small wooden billy (the weapon here charged to have been used being such as is daily used by police officers of the various cities of this state). The testimony on the part of the defense—both of the appellants and of several eye-witnesses—was to the effect that, as Fredericks entered Crossland's office, Langon was on the floor with several participants in the affray in the act of striking him, and thereupon, and at once, Crossland and one Williams made a vigorous assault upon said Fredericks, whereupon Fredericks picked up a walking stick standing in Crossland's office and struck Crossland over the head with it, the result of which was that Crossland received the injury of which complaint is made in this case. Fredericks testified that he never used the billy as charged by the state, and that he went into Crossland's office entirely unarmed. Fredericks further testified that his sole object in going into Crossland's office was to attempt peaceably to quell the disturbance and affray which he saw in progress, and that what was done by him after entering said office was absolutely necessary in defense of his own person in repelling an assault first made upon himself. The testimony very satisfactorily shows that Langon neither had nor used the billy referred to in this case, and that Fredericks neither had, nor used the knuckles, and both defendants testified that they had neither.

The defendants offered Lucy Collins to impeach Crossland but her evidence was excluded because proper foundation had not been laid. Thereupon defendant requested to have Crossland recalled for further cross-examination and the court refused to permit it.

Complaint is made of the instructions and they will be noted specifically in the further discussion of the case.

I.  The defendants asked and the court refused an instruction on the right of self-defense, and in this it is insisted the court erred.  No reason is urged by the attorney general why such an instruction was not proper.  The defendant Langon testified positively that Crossland assaulted him before he made any demonstrations whatever to strike him; that he simply attempted to protect himself, and Fredericks corroborates Langon to the extent that several of the negroes were beating him when he came to his rescue.  In a case when so much depended upon the credit which the jury might give the different witnesses we think the defendant Langon was clearly entitled to an instruction that he had the right to repel the assault by all reasonable means in his power.  On the other hand if Fredericks only went in to assist in quelling the disturbance and was first assaulted by the other negroes he too was entitled to a similar instruction.  The criminal court could not assume that Crossland and his crowd only told the truth and base its instructions upon this evidence alone.  Probably he did not believe the evidence of Federicks and Langon but the law cast that duty upon the jury and they were entitled to have the jury pass upon their evidence.

II.  Defendants also complain that the court refused to submit to the jury the law of common assault.  We think the learned court erred in this respect.  The court had submitted to the jury whether the sticks with which Crossland was struck were either of them deadly weapons.  If they were not then the jury should have been left to say whether there was a less offense than an intention to kill Crossland.  The fact that one of the sticks broke into two pieces at the first blow; that several of the witnesses deny that Langon struck at Crossland at all with knucks and that Fredericks picked up an ordinary walking stick after coming into

the room and only used that during the *melee*, all might well be urged to reduce the offense, if any, to a common assault. *State v. Buchler*, 103 Mo. 203; *State v. Webster*, 77 Mo. 566; *State v. Reynolds*, 126 Mo. 516.

III. As to the other questions, as to evidence, it is unnecessary to say more than that ordinarily it is a matter of discretion to allow a witness to be recalled for cross-examination. Such a question can be avoided by specifying time and place and the particular matter on another trial.

The court gave an instruction on the theory of conspiracy. While we think there was evidence from which a previous agreement might have been found, the converse is also true, and if the jury found there was none then each party was only liable for his own conduct and the court should be careful to avoid the objection now urged that Fredericks was found guilty upon proof against Langon and Langon on evidence that was admissible only against Fredericks.

For the errors noted, the judgment is reversed and the cause remanded. SHERWOOD and BURGESS, JJ., concur.