**STATE of Missouri, Respondent,**

v.

**Jeffrey D. LONG, Appellant.**

**No. SC 85620.**

Supreme Court of Missouri,
En Banc.

July 1, 2004.

Rehearing Denied Aug. 24, 2004.

Craig A. Johnston, Office of the State Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

RICHARD B. TEITELMAN, Judge.

Jeffrey D. Long was convicted of one count of forcible rape, section 566.030, RSMo 2000,[1] and one count of forcible

1. All statutory references are to RSMo 2000.

sodomy, section 566.060. The trial court abused its discretion by prohibiting Long from introducing evidence of prior false allegations by the victim. The judgment is reversed and the case is remanded.

## FACTS

According to the state's evidence, the victim went to Long's apartment with Chris Manning. Once at Long's apartment, all three began drinking. At some point, Long and Manning beat and sexually assaulted the victim and then forced her out of Long's apartment and into a hallway. She remained there until the next morning because she was afraid and in pain. She then walked to a nearby grocery store, where a security guard called a taxi for her. She went home, bathed, and tried to recover from the assault.

A few days later, she reported the incident to police. A medical examination revealed bruising, rectal trauma, and vaginal tears and abrasions consistent with a sexual assault. Although there was substantial physical evidence that the victim had been assaulted, a police search of Long's apartment recovered no evidence indicating the victim had been assaulted there. There was no physical evidence linking Long to the assault. Long denied assaulting the victim. There were no other witnesses.

In order to rebut the victim's allegations, Long attempted to introduce testimony from three witnesses via offers of proof. In the first offer of proof, Timothy Wilson testified that the victim had told the police that he had physically assaulted her by hitting her on the head with a rock. Wilson also testified that, on another occasion, the victim had told police that he had threatened her with harm. The neighbor testified that both allegations were false.

In the second offer of proof, a police detective testified that the victim alleged that Wilson had threatened her. The detective testified that the victim later called her and said that Wilson was not the man who threatened her.

In the final offer of proof, the neighborhood property manager testified that the victim called her and accused Wilson of luring her from her home by pretending to be a security guard and then sexually assaulting her. Two weeks later, the victim called the property manager and recanted her story.

The trial court excluded the testimony in each offer of proof, concluding that it was irrelevant and not "proper character evidence." Long's attorney did not cross-examine the victim regarding these prior allegations.

### *ANALYSIS*

■ In his first point on appeal,[2] Long argues that the trial court abused its discretion in excluding the testimony of the three witnesses who said that the victim had made previous false allegations of sexual or physical assault. Long maintains that the excluded testimony was central to his defense that the victim had falsely accused him of assaulting her.[3] The state argues that the proffered testimony was inadmissible as an improper attempt to prove the victim's untruthfulness with extrinsic evidence of specific acts of misconduct.

### I.

Missouri law allows a party to attack the credibility of witness by demonstrating the witnesses' bad character for truth and veracity. John C. O'Brien, MISSOURI LAW OF EVIDENCE, section 5–7 (3d ed.1996). While a party may cross-examine the witness regarding specific acts of misconduct relating to credibility, these prior acts may not be proven by extrinsic evidence. *Rousan v. State,* 48 S.W.3d 576, 590 (Mo. banc 2001). Thus, when a defendant cross-examines a witness about prior misconduct, the defendant is "bound by the witness' answer" and "cannot offer evidence to the contrary, unless, of course, the character of the witness has been put in issue on direct examination." *State v. Williams,* 492 S.W.2d 1, 4 (Mo.App.1973).

The bar on extrinsic evidence of prior, specific acts of misconduct furthers the general policy focusing the fact-finder the most probative facts and conserving judicial resources by avoiding mini-trials on collateral issues. *Hoffman v. Graber,* 153 S.W.2d 817, 820 (Mo.App.1941). In some cases, however, the rule excluding extrinsic evidence of prior false allegations fails to serve this purpose by shielding the fact-finder not from collateral issues, but from a central issue in the case. An issue is not collateral if it is a "crucial issue directly in controversy." *State v. Williams,* 849 S.W.2d 575, 578 (Mo.App.1993). Where, as in this case, a witness' credibility is a key factor in determining guilt or acquittal, excluding extrinsic evidence of the witnesses' prior false allegations deprives the

---

**2.** As a new trial has been granted, the other claims of error raised in this appeal need not be reviewed.

**3.** Section 491.015, known as the rape shield statute, does not bar inquiry into prior false allegations of rape or sexual assault. Evidence of prior complaints, as opposed to prior sexual conduct, is not rendered inadmissi-

ble by section 491.015. *State v. Raines,* 118 S.W.3d 205, 212 (Mo.App.2003); *State v. Scott,* 78 S.W.3d 806, 810 (Mo.App.2002). However, it is possible that some prior allegations of sexual assault could implicate prior sexual conduct. In that case, the trial court would have to consider the applicability of section 491.015.

fact-finder of evidence that is highly relevant to a crucial issue directly in controversy; the credibility of the witness. An evidentiary rule rendering non-collateral, highly relevant evidence inadmissible must yield to the defendant's constitutional right to present a full defense. Mo. Const. art. 1, section 18(a).

To remedy this problem, several jurisdictions allow defendants to introduce extrinsic evidence to prove that a victim has previously made false allegations.[4] Although the exact rationales for and restrictions on the admissibility of such evidence varies, the common theme is a concern for striking the appropriate balance between avoiding misguided focus on collateral issues while allowing the accused to fully defend against the charge.

■ The current Missouri rule prohibiting extrinsic evidence of prior false allegations does not strike the appropriate balance. Therefore, a criminal defendant in Missouri may, in some cases, introduce extrinsic evidence of prior false allegations. This rule is not limited to sexual assault or rape cases.

## II.

Having determined that extrinsic evidence of prior false allegations may be admissible, the requirements for establishing admissibility must be defined. In cases involving rape or sexual assault,

most states require trial courts to make a preliminary determination, outside the presence of the jury, that (1) the victim made another allegation of rape or sexual assault; (2) this allegation was false; and, (3) the victim knew the allegation was false. *Morgan v. State*, 54 P.3d 332, 337 (Alaska App.2002).

■ While the second and third requirements are sound, the first is not. Prior false allegations are relevant to the witness' credibility. The relevance of the prior false allegation is thus derived primarily from the fact that the allegation was false and not entirely from the subject matter of the prior false allegation. The rule limiting the inquiry to prior false allegations that are the same as the charged offense erroneously focuses the relevance analysis entirely upon the subject matter of the allegation and ignores the fact from which relevance to witness credibility is derived; the fact that the allegation was false. Therefore, the fundamental requirement for admitting extrinsic evidence of a prior false allegation should be a showing of legal relevance[5] in which the trial court must balance the probative value of the knowingly made prior false allegation with the potential prejudice. Of course, similarities between the prior false allegation and the charged offense as well as circumstances under which the allegation was made all factor into the relevance analysis. A prior false allegation could be so remote

**4.** *Morgan v. State*, 54 P.3d 332, 333 (Alaska App.2002); *State v. Walton*, 715 N.E.2d 824 (Ind.1999); *Cliburn v. State*, 710 So.2d 669, 670 (Fla. 2d DCA 1998) (prior false allegation of kidnapping admissible); *Beck v. State*, 1991 OK CR 126, 824 P.2d 385 (1991); *Miller v. State*, 105 Nev. 497, 779 P.2d 87, 89 (1989); *Smith v. State*, 259 Ga. 135, 377 S.E.2d 158, 160 (1989); *State v. Barber*, 13 Kan.App.2d 224, 766 P.2d 1288, 1290 (1989); *Clinebell v. Commonwealth*, 235 Va. 319, 368 S.E.2d 263, 263 (1988); *State v. Anderson*, 211 Mont. 272, 686 P.2d 193, 199–200 (1984); *People v. Mi-*

*kula*, 84 Mich.App. 108, 269 N.W.2d 195, 199 (1978); *People v. McClure*, 42 Ill.App.3d 952, 1 Ill.Dec. 617, 356 N.E.2d 899, 901 (1976); *State v. Izzi*, 115 R.I. 487, 348 A.2d 371, 372–73 (1975).

**5.** Evidence is legally relevant if its probative value outweighs its costs—prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or cumulativeness. *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002).

in time or made under circumstances so dissimilar to the charged offense that the prejudice outweighs the probative value. As with any other relevancy ruling, trial courts retain wide discretion in determining the legal relevance of prior false allegations.

Most states require a defendant to establish that the prosecuting witness previously made knowingly false allegations either by a preponderance of the evidence or by clear and convincing evidence. *Morgan*, 54 P.3d at 338. The preponderance of the evidence standard is consistent with other foundational requirements [6] for admitting or excluding evidence in Missouri and is, therefore, the applicable standard for determining whether a defendant has established that the prosecuting witness previously made knowingly false allegations. As in other cases, the defendant may rely upon the full panoply of available evidence for establishing admissibility. Documents, witnesses and other such evidence may be admissible to demonstrate the relevance of prior false allegations.

## III.

The facts of this case indicate that Long is entitled to an opportunity to establish the admissibility of extrinsic evidence regarding the victim's prior false allegations.[7] The prosecuting witness testified that Long assaulted her. Long denies doing so. No other witnesses testified that Long sexually assaulted the victim. There was no physical evidence linking Long to the assault on the victim. The jury's assessment of the relative credibility of Long and the prosecuting witness was the key to Long's conviction, thereby enhancing the relevance of prior false allegations. Under these circumstances, excluding evidence of prior false allegations was prejudicial because the Long was deprived of a full opportunity to present his defense that the witness was fabricating the present allegations against him.

The judgment is reversed, and the case is remanded for a new trial.[8]

---

6. When a defendant challenges the admissibility of a confession, the confession is admissible only if the state proves the voluntariness of a defendant's confession by a preponderance of the evidence. *State v. Ervin* 979 S.W.2d 149, 160 (Mo. banc 1998).

The state must show by a preponderance of the evidence that allegedly false statements in a search warrant were not made intentionally or with reckless disregard for the truth. *State v. Trenter*, 85 S.W.3d 662, 666 (Mo.App.2002).

The state bears the burden of showing by a preponderance of the evidence that a motion to suppress should be denied. *State v. Heyer*, 962 S.W.2d 401, 405 (Mo.App.1998) (citing *State v. Hoopingarner*, 845 S.W.2d 89, 92 (Mo. App.1993)).

7. The state argues that Mr. Long's failure to cross-examine the victim also operates to bar him from introducing extrinsic evidence of the prior allegations. As the dissent points out, the defendant should normally first cross-examine the witness prior to introducing extrinsic evidence of prior false allegations. In this case, the decision not to cross-examine the victim regarding the prior allegations does not bar Mr. Long from introducing the evidence. Among the reasons given by the trial court for refusing Mr. Long's offers of proof was that the proffered testimony was not relevant. It would, therefore, likely have been futile for counsel to attempt to cross-examine the victim regarding subject matter that the trial court had already ruled irrelevant. "The law does not compel the undertaking of a useless act for the lone aim of complying with a technical requirement." *State v. Barnett*, 628 S.W.2d 917, 920[4] (Mo. App.1982); *State v. Spulak*, 720 S.W.2d 396, 398 (Mo.App.1986).

8. The trial judge, who consistently displayed a concern for fairness throughout the course of the trial, reasonably interpreted existing Missouri precedent in declining to admit the proffered testimony. This opinion is thus a critique of one aspect of Missouri's common law

WHITE, C.J., WOLFF and STITH, JJ., concur.

PRICE, J., dissents in separate opinion filed.

LIMBAUGH, J., dissents in separate opinion filed.

BENTON, J., concurs in opinion of LIMBAUGH, J.

WILLIAM RAY PRICE, JR., Judge, dissenting.

I agree with the second and third rationales expressed in Judge Limbaugh's dissenting opinion and would affirm the conviction. Because these two rationales are dispositive, it is not necessary to address the appropriate circumstances in which prior false accusations may be used to impeach a witness.

STEPHEN N. LIMBAUGH, JR., Judge, dissenting.

I respectfully dissent. Though some change in the law is warranted in sexual assault cases where the victim's credibility is at issue, I would hold that extrinsic evidence of a victim's prior false accusations should be admissible only if 1) the accusations are similar to the charged offense, and 2) the victim denies making the false accusations after being confronted on cross-examination. In this case, it need not be determined whether the first condition was met because certainly the second condition was not met, and in any event, the defendant was not prejudiced by the exclusion of the evidence.

I first take issue with the majority's expansive and unprecedented holding that the prior false allegations sought to be introduced need not be similar to the charged offense. Instead, as the majority explains, "[t]he relevance of prior false

allegations is not premised upon the subject matter of the prior false allegation ... [and] ... the fundamental requirement for admitting extrinsic evidence of a prior false allegation is essentially a showing of legal relevance by balancing the probative value of the knowingly made prior false allegation with the potential prejudice." As the majority acknowledges, however, "[i]n cases involving rape or sexual assault, most states require trial courts to make a preliminary determination ... that (1) the prosecuting witness made another allegation of rape or sexual assault [that was false]." In fact, *every* state that has allowed extrinsic evidence of false allegations in sexual assault cases requires that the prior false allegation be the same as or at least similar to the charged offense. *See, e. g., Pantazes v. State,* 376 Md. 661, 831 A.2d 432, 447 (2003); *Morgan v. State,* 54 P.3d 332, 333 (Alaska App.2002); *State v. West,* 95 Hawai'i 452, 24 P.3d 648, 654 (2001); *Lopez v. State,* 18 S.W.3d 220, 226 (Tex.Crim.App.2000) (refusing to adopt *per se* rule but looking at each case individually); *State v. Walton,* 715 N.E.2d 824, 828 (Ind.1999); *State v. Smith,* 743 So.2d 199, 202–03 (La.1999); *State v. Johnson,* 123 N.M. 640, 944 P.2d 869, 878 (1997); *People v. Grano,* 286 Ill.App.3d 278, 221 Ill.Dec. 727, 676 N.E.2d 248, 257–58 (1996); *State v. McCarroll,* 336 N.C. 559, 445 S.E.2d 18, 20 (1994); *State v. DeSantis,* 155 Wis.2d 774, 456 N.W.2d 600, 606 (1990); *Roundtree v. U.S.,* 581 A.2d 315, 322 (D.C.1990); *Smith v. State,* 259 Ga. 135, 377 S.E.2d 158, 160 (1989); *Miller v. State,* 105 Nev. 497, 779 P.2d 87, 89–90 (1989); *State v. Barber,* 13 Kan.App.2d 224, 766 P.2d 1288, 1289–90 (1989); *Commonwealth v. Bohannon,* 376 Mass. 90, 378 N.E.2d 987, 991 (1978); *State v. Izzi,* 115 R.I. 487, 348 A.2d 371, 372–73 (1975); *State v. Nab,* 245 Or. 454, 421 P.2d 388, 391 (1966).

of evidence, not of the trial court's legal acumen and judgment.

In effect, these states already have undertaken the majority's legal relevance/balancing approach by determining, categorically, and as a matter of law, that in cases of sexual assault, the probative value of knowingly made false allegations outweighs the potential prejudice only where the false allegations are the same or similar to the charged offense. Conversely, where the false allegations are not the same or similar to the charged offense, the probative value of the false allegations never outweighs the potential prejudice. This is the better rule. It is a bright line that is easier to apply, and it is more in keeping with the general rule, as cited by the majority, that bars extrinsic evidence of prior, specific acts of misconduct so to conserve judicial resources by avoiding mini-trials on collateral issues. Theoretically, under the majority rule, even the false report of a property loss to collect insurance proceeds or the willful failure to pay a tax is admissible in a sexual assault case. This is the unfortunate result of painting with too broad a brush.[1]

Assuming that the false allegations here were sufficiently similar under the different rule I would adopt, defendant did not follow the proper procedure for their admission. The majority ignores defendant's clear violation of the longstanding evidentiary rule that precludes the introduction of extrinsic evidence to impeach a witness with specific acts of misconduct without first affording the witness the opportunity to affirm or deny the matter on cross-examination. *See State v. Fredericks,* 136 Mo. 51, 37 S.W. 832, 833 (1896); *Strahl v. Turner,* 310 S.W.2d 833, 844 (Mo.1958). The rule is designed, of course, to promote efficiency and preserve judicial resources. It is also to ensure "that the sideshow does

not take over the circus." *State v. Johnson,* 700 S.W.2d 815, 818 (Mo. banc 1985); John W. Strong, McCormick on Evidence sec. 39 (5th ed.1999). Here, for instance, had counsel for defendant inquired of the victim on cross-examination whether she had made false allegations in the past, and the trial court determined that the questioning was relevant on the issue of her credibility, she may have admitted doing so, thus obviating the need for the introduction of extrinsic evidence and the attendant waste of time. *See, e. g., Hoover v. Denton,* 335 S.W.2d 46, 48 (Mo.1960) (holding that extrinsic evidence should not be admitted once a person admits to a criminal conviction on cross-examination because the further impeachment becomes "surplusage"). *See also* McCormick on Evidence sec. 39 ("If the witness fully admits the facts, the impeacher should not be allowed to prolong the attack by calling other witnesses"). However, the majority, in a footnote, dismisses defendant's failure to cross-examine as unnecessary, stating that "[i]t likely would have been futile for counsel to attempt to cross-examine the victim regarding subject matter that the trial court had already ruled irrelevant." That likelihood, though, should not excuse a litigant from making a proper record. The rule for false allegations in sexual assault cases, up to now, was that the cross-examiner was bound by the answers of the witness, and extrinsic evidence was inadmissible to impeach the witness. But the fact that the new rule now allows the introduction of extrinsic evidence to contradict the witness' answers is no reason to discard the requirement that the matter must first be brought up on cross-examination. In fact, all the other appellate courts that have addressed the introduction of extrinsic evidence of a witness' false alle-

---

**1.** Not at issue in this case is whether the false reports occurred "recently" before trial, or were too remote in time to be relevant. *See*

*State v. Wolfe,* 13 S.W.3d 248, 258 (Mo. banc 2000); *State v. Williams,* 492 S.W.2d 1, 6–7 (Mo.App.1973).

gations in sexual assault cases have done so only in the context of a foundational cross-examination. *See generally, State v. Baker,* 679 N.W.2d 7 (Iowa 2004); *Pantazes v. State,* 376 Md. 661, 831 A.2d 432 (2003); *State v. Bray,* 356 N.J.Super. 485, 813 A.2d 571 (2003); *Morgan v. State,* 54 P.3d 332 (Alaska App.2002); *State v. Gordon,* 146 N.H. 258, 770 A.2d 702 (2001); *State v. West,* 95 Hawai'i 452, 24 P.3d 648 (2001); *Lopez v. State,* 18 S.W.3d 220 (Tex. Crim.App.2000); *Bryant v. State,* 734 A.2d 157, 1999 WL 507300 (Del.1999); *State v. Walton,* 715 N.E.2d 824 (Ind.1999); *State v. Smith,* 743 S.2d 199 (La.1999); *State v. Harris,* 97 Wash.App. 865, 989 P.2d 553 (1999); *Booker v. State,* 334 Ark. 434, 976 S.W.2d 918 (1998); *State v. Johnson,* 123 N.M. 640, 944 P.2d 869 (1997); *State v. Chamley,* 568 N.W.2d 607 (S.D.1997); *State v. Quinn,* 200 W.Va. 432, 490 S.E.2d 34 (1997); *State ex rel. Mazurek v. District Court of the Mont. Fourth Judicial Dist.,* 277 Mont. 349, 922 P.2d 474 (1996); *People v. Grano,* 286 Ill.App.3d 278, 221 Ill.Dec. 727, 676 N.E.2d 248 (1996); *State v. Kelley,* 229 Conn. 557, 643 A.2d 854 (1994); *State v. McCarroll,* 336 N.C. 559, 445 S.E.2d 18 (1994); *State v. Goodnow,* 162 Vt. 527, 649 A.2d 752 (1994); *State v. Boggs,* 63 Ohio St.3d 418, 588 N.E.2d 813 (1992); *Commonwealth v. Boyles,* 407 Pa.Super. 343, 595 A.2d 1180 (1991); *State v. Boiter,* 302 S.C. 381, 396 S.E.2d 364 (1990); *State v. DeSantis,* 155 Wis.2d 774, 456 N.W.2d 600 (1990); *Roundtree v. U.S.,* 581 A.2d 315 (D.C.1990); *Phillips v. State,* 545 So.2d 221 (Ala.Crim.App.1989); *Smith v. State,* 259 Ga. 135, 377 S.E.2d 158 (1989); *Miller v. Nevada,* 105 Nev. 497, 779 P.2d 87 (1989); *State v. Barber,* 13 Kan.App.2d 224, 766 P.2d 1288 (1989); *Clinebell v. Commonwealth,* 235 Va. 319, 368 S.E.2d 263 (1988); *State v. Schwartzmiller,* 107 Idaho 89, 685 P.2d 830 (1984); *People v. Hackett,* 421 Mich. 338, 365 N.W.2d 120 (1984); *State v. Kringstad,* 353 N.W.2d 302 (N.D.1984); *State v. Hutchinson,* 141 Ariz. 583, 688 P.2d 209 (1984); *State v. Caswell,* 320 N.W.2d 417 (Minn. 1982); *People v. Mandel,* 48 N.Y.2d 952, 425 N.Y.S.2d 63, 401 N.E.2d 185 (1979); *Commonwealth v. Bohannon,* 376 Mass. 90, 378 N.E.2d 987 (1978); *State v. Simbolo,* 188 Colo. 49, 532 P.2d 962 (1975); *State v. Izzi,* 115 R.I. 487, 348 A.2d 371 (1975); *State v. Nab,* 245 Or. 454, 421 P.2d 388 (1966); *People v. Hurlburt,* 166 Cal.App.2d 334, 333 P.2d 82 (1958). I cannot fathom why Missouri should stand apart.

Finally, even if the evidence of false allegations should have been admitted, I would hold that the failure to do so was not prejudicial. First, the defendant did indeed introduce testimony that the victim's reputation for truth and veracity was very poor, and defense counsel's focus on closing argument was the victim's inconsistent stories and behaviors. The additional evidence of specific false allegations—allegations that were not nearly so serious and that involved dissimilar incidents with a different individual—would have added little. Second, and more important, this was not merely a "he said-she said" case as the majority characterizes—a case that turned solely on the victim's credibility. Instead, there was ample independent support for the victim's claim that the incident was not consensual and the wounds were not self-inflicted, which was the sole defense. At trial, Long admitted to consensual sexual activity with the victim, but testified that her injuries were self-inflicted and that it was "not surprising that she had bruises or a bump on her head ... she was so violent and hysterical...." However, as noted, and contrary to Long's defense of consent, the victim exhibited much more than "bruises or a bump on her head," she suffered significant injuries to her vaginal and anal areas and was beaten severely over her entire body. The particulars of

the uncontroverted evidence press the point: She finally went to the hospital two days after the attack because she still was "bleeding from [her] rectum." An external body exam conducted by a "sexual assault nurse examiner" revealed "multiple bruises throughout her arms and legs ... head ... shoulders ... jaw ... [and] fingers ... consistent with the way [the victim described] being held [by her assailants]." She also suffered "abrasions" to her labia and "inflammation" in her vaginal area, "indicative of forced penetration." Additionally there was "a lot of bruising, swelling, [and] abrasions" inside and around the rectum, causing so much pain that the victim "could barely sit down." In my view, and that of a reasonable juror, no person would consent to such mistreatment.

For the foregoing reasons, I would affirm the judgment.